**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Northern Division*

| | |
|---|---|
| KABIRU A. ADAMS, *on behalf of himself and all others similarly situated*, ) ) ) ) 1007 Hallimont Road ) Baltimore, Maryland 21228 ) ) Plaintiff, ) ) v. ) ) MANUFACTURERS AND TRADERS TRUST ) COMPANY, ) ) One M&T Plaza ) Buffalo, New York 14203 ) ) Serve: CSC-Lawyers Incorporating Service ) Company ) 7 St. Paul Street, Suite 820 ) Baltimore, Maryland 21202 ) ) Defendant. ) ) | Civil Action No. 1:24-cv-3783 **PLAINTIFF DEMANDS A JURY TRIAL** |

**CLASS ACTION COMPLAINT**

1. Plaintiff Kabiru A. Adams, on behalf of himself and all other similarly situated individuals, alleges as follows for his Class Action Complaint against Manufacturers and Traders Trust Company ("M&T Bank").

**PRELIMINARY STATEMENT**

2. Congress enacted the Electronic Fund Transfer Act ("EFTA") as a "remedial consumer protection statute," which courts "read liberally to achieve the goals of protecting consumers." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019).

3. Concerned that uninformed consumers would encounter abuse in a rapidly changing electronic banking industry, Congress enacted several provisions to limit consumer liability for "unauthorized" electronic fund transfers.

4. Relevant here, the EFTA: (1) limits consumer liability for unauthorized electronic fund transfers, 15 U.S.C. § 1693g(a); and (2) independently requires that financial institutions investigate consumer claims of "error," including unauthorized electronic fund transfers, 15 U.S.C. § 1693f(a).

5. Addressing those provisions, one federal appeals court recently explained that

> the purpose of the [EFTA] is to *benefit consumers, even at the expense of financial institutions*. The EFTA requires financial institutions to investigate and resolve consumer-reported unauthorized electronic fund transfers within a limited time frame. And although consumers can be liable for unauthorized electronic fund transfers involving their accounts, the EFTA limits their liability and places the burden on financial institutions to prove consumer liability.

*Michigan First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 427 (6th Cir. 2024) (emphasis added).

6. To ensure that correct decisions are made, financial institutions also must communicate to consumers—in writing, within three days—an *explanation* of their decisions to deny disputes. 15 U.S.C. § 1693f(d).

7. The EFTA's unauthorized use protections and notice requirements are especially important because banks are rapidly replacing traditional modes of banking with online products.

8. M&T Bank, for example, promotes its mobile and online banking capabilities by advertising that its members can "[m]ove [their] money quickly" and "[m]anage [their] money from the palm of [their] hand." M&T Bank, *Explore Our Online & Mobile Banking Services*, https://www.mtb.com/personal/online-and-mobile (last visited Dec. 24, 2024).

2

9. Those technological advancements—such as innovations aimed at making banking easier—have expanded the fraudster's playbook. *See id.* (advertising remote transfer options and mobile check deposits).

10. Indeed, consumer reports of bank fraud to the Federal Trade Commission more than quadrupled between Q1 2019 and Q1 2022. *See* Federal Trade Commission, *Compare Identity Theft Report Types* (Apr. 25, 2024), *available at* https://public.tableau.com/app/profile/federal.trade.commission/viz/IdentityTheftReports/TheftTypesOverTime (last visited Dec. 24, 2024).

11. Plaintiff, a retired employee of the State of Maryland, is a recent victim of this new wave of bank fraud.

12. On May 1 and 2, 2024, Plaintiff was victimized by five unauthorized electronic fund transfers made from his M&T Bank checking account.

13. After learning of the unauthorized transactions on or about May 2 following notice from M&T Bank, Plaintiff reported the fraud in person at a branch location.

14. In response to Plaintiff's disputes, M&T Bank provided Plaintiff with a provisional credit in the amount of $1,000, which was the amount of one of the five transactions.

15. In a letter describing its decision to not grant Plaintiff provisional credits for the other four transactions, M&T Bank inaccurately stated: "Please note, we have not issued provisional credit[s] for all transactions because you did not notify us within the required timeframe as described in the applicable error resolution provisions in the terms governing your account."

16. That statement confused Plaintiff because he disputed the transactions on the day that they happened, May 2, which was also the date that the letter was issued.

17. For all intents and purposes, Plaintiff could not have reported the fraud any sooner than he did.

18. By May 3, after apparently undertaking no investigation at all, M&T Bank decided that the disputed transactions were processed correctly.

19. M&T Bank's denial letters stated: "After a review of your account and thorough investigation, we have determined that the transaction(s) in question were processed correctly and no error has occurred. Therefore, we are denying your claim."

20. M&T Bank correspondingly reversed the $1,000 provisional credit on May 14.

21. In the months that followed, Plaintiff made several attempts to appeal M&T Bank's decision because he did not know how M&T Bank could have concluded that he performed the challenged transactions. Plaintiff also pressed M&T Bank for an explanation.

22. M&T Bank denied each appeal, confirming each time through written correspondence its purported belief "that the transaction(s) in question were processed correctly and [that] no error has occurred."

23. As with its initial denial letters, M&T Bank still did not explain its purported basis for concluding that Plaintiff authorized or benefitted from the disputed transactions.

24. Consequently, to date, Plaintiff has been unable to discern M&T Bank's basis for holding him responsible for nearly $5,000 in losses that he cannot afford on a limited income. Plaintiff, of course, has been unable to change M&T Bank's mind without knowing *why* it believes that he is either behind the fraud or mistaken about the disappearance of almost $5,000. M&T Bank, on the other hand, has benefited by refusing to carry out its reimbursement obligation.

25. M&T Bank violated 15 U.S.C. § 1693g because it held Plaintiff liable for unauthorized transfers that he did not perform and that he did not benefit from.

26. M&T Bank also violated 15 U.S.C. § 1693f(a) because it failed to investigate Plaintiff's disputes in compliance with the EFTA's error resolution procedures.

27. M&T Bank's §§ 1693g and 1693f(a) violations entitle Plaintiff to his actual damages, statutory damages, attorneys' fees, and costs. *See* 15 U.S.C. § 1693m.

28. Additionally, Plaintiff is entitled to treble damages because M&T Bank did not timely provide him with provisional credits and neither conducted a good faith investigation of Plaintiff's disputes, or had a reasonable basis for believing that Plaintiff authorized the challenged transactions.

29. Alternatively Plaintiff is entitled to treble damages because M&T Bank knowingly and willfully concluded that his account was not in error when such conclusion could not reasonably have been drawn from the evidence available to M&T Bank at the time of its investigation. 15 U.S.C. § 1693f(e).

30. Finally, M&T Bank violated 15 U.S.C. § 1693f(d) because it failed to deliver to Plaintiff an *explanation* of its determination that the disputed transfers were authorized.

31. Plaintiff asserts a § 1693f(d) claim on behalf of a class of similarly situated consumers because M&T Bank systemically uses the following "explanation" when denying claims of unauthorized electronic fund transfers: "After a review of your account and thorough investigation, we have determined that the transaction(s) in question were processed correctly and no error has occurred. Therefore, we are denying your claim."

32. Plaintiff and the class members are entitled to their actual damages, as well as statutory damages up to "$500,000 or 1 per centum of the net worth of" M&T Bank. 15 U.S.C. § 1693m(a)(2)(B).

## JURISDICTION AND VENUE

33. This Court has jurisdiction under 28 U.S.C. § 1331.

34. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and Division, and a substantial part of the events giving rise to Plaintiff's claims occurred here.

## PARTIES

35. Plaintiff is a natural person and a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

36. M&T Bank is a New York company with a principal place of business in Buffalo, New York. It is a "financial institution" as defined by the EFTA, 15 U.S.C. § 1693a(9).

## FACTS

### *The Unauthorized Transfers and M&T Bank's "Explanation"*

37. Plaintiff immigrated to the United States of America from Nigeria in 1991.

38. Between 1993 and 2016, Plaintiff worked for the State of Maryland at Spring Grove Hospital Center in Catonsville.

39. After retiring from his employment with the State of Maryland, Plaintiff has worked approximately two days a week as a school nurse.

40. Plaintiff and his dependents—some in Nigeria—live off his limited income.

41. On May 1 and 2, 2024, Plaintiff was victimized by five unauthorized electronic fund transfers made from his M&T Bank checking account.

42. Plaintiff did not perform, authorize, or benefit from those transactions.

43. Plaintiff does not know how the transactions were performed because Plaintiff remains in possession of his M&T Bank debit card.

44. Plaintiff's account records identified the transactions as follows:

| POSTING DATE | TRANSACTION DESCRIPTION | DEPOSITS & OTHER CREDITS (+) | WITHDRAWALS & OTHER DEBITS (-) | DAILY BALANCE |
|---|---|---|---|---|
| | ACCOUNT ACTIVITY | | | |
| 05/01/2024 | M&T ATM CASH WITHDRAWAL ON 05/01 PAINTRS MILL, 9840 REISTRSTWN RD, OWING MLLS MD | | 1,000.00 | |
| 05/02/2024 | PIN SAFEWAY 1657   OWINGS MILLS | | 1,001.98 | |
| 05/02/2024 | PIN GIANT 0322   BALTIMORE | | 801.98 | |
| 05/02/2024 | PIN GIANT LANDOVER #23 OWINGS MILLS | | 500.99 | |
| 05/02/2024 | M&T ATM CASH WITHDRAWAL ON 05/02 PERRY HALL DUP, 8627 BELAIR RD, PRY HL MD 21128 ENDING BALANCE | | 1,000.00 | |

45. Upon information and belief, an unknown fraudster gained access to a duplicate debit card either from M&T Bank or through illegal means, in either case, doing so without Plaintiff's knowledge or permission.

46. Plaintiff discovered the unauthorized transactions on or about May 2 when M&T Bank contacted him to inquire about suspicious account activity.

47. In response to that call, Plaintiff reported the fraud in person at a branch location.

48. In response to several questions, Plaintiff advised M&T Bank that he remained in possession of his debit card, that he had not shared his PIN with anyone, and that he did not recognize, authorize, or benefit from the disputed transactions.

49. Plaintiff's answers and M&T Bank's receipt of the same are reflected in M&T Bank correspondence.

50. In response to Plaintiff's disputes, M&T Bank provided Plaintiff with a provisional credit in the amount of $1,000, which was the amount of one of the transactions and approximately 20% of the entire loss.

7

51. In a letter describing its decision to not grant Plaintiff provisional credits for the other transactions, M&T Bank wrongfully accused Plaintiff of disputing the transactions out of time.

52. That letter stated: "Please note, we have not issued provisional credit[s] for all transactions because you did not notify us within the required timeframe as described in the applicable error resolution provisions in the terms governing your account."

53. That statement confused Plaintiff because he disputed the transactions on May 2, which was the day that the transactions took place and the same day that letter was issued.

54. The letter was inaccurate because, under the EFTA, a provisional credit was required so long as Plaintiff notified M&T Bank of the fraud within 60 days of his receipt of the account statement showing the fraud. *See* 15 U.S.C. § 1693f(a).

55. By May 3, M&T Bank decided, incorrectly, that the disputed transactions were processed correctly.

56. M&T Bank's denial letters stated, vaguely: "After a review of your account and thorough investigation, we have determined that the transaction(s) in question were processed correctly and no error has occurred. Therefore, we are denying your claim."

57. Plaintiff was confused because he did not authorize the transactions, and he did not benefit from them.

58. Plaintiff experienced much emotional distress knowing that he was out $5,000 and that there was apparently nothing he could do to change M&T Bank's errant decision.

59. Plaintiff did not understand why M&T Bank did not review security footage of the transactions, why M&T Bank did not review Plaintiff's transaction history, and why M&T Bank ignored all information that it obtained from Plaintiff.

8

60. Upon information and belief, M&T Bank's decision was rooted entirely in the fact that Plaintiff remained in possession of his debit card.

61. M&T Bank correspondingly reversed the $1,000 provisional credit on May 14.

62. In the months that followed, Plaintiff made several attempts to appeal M&T Bank's decision because he did not know how M&T Bank could have concluded that he performed the challenged transactions.

63. M&T Bank denied each appeal, confirming through written correspondence its purported belief "that the transaction(s) in question were processed correctly and [that] no error has occurred."

64. M&T Bank's most recent denial was issued on December 2.

65. Consistent its initial denial letters, M&T Bank still has not explained its basis for its purported conclusion that Plaintiff authorized or benefitted from the disputed transactions.

66. In fact, M&T Bank has provided Plaintiff with no information supporting its denials, even though Plaintiff has requested such proof several times.

67. Consequently, to date, Plaintiff has been unable to discern M&T Bank's basis for holding him responsible for nearly $5,000 in losses that he cannot afford on a limited income.

68. Upon information and belief, M&T Bank provides that so-called "explanation" to all consumers for whom it denies EFTA disputes relating to unauthorized use.

69. Of course, M&T Bank's "black box" approach to explaining its decisions is no explanation at all.

70. Consequently, consumers like Plaintiff are unable to discern M&T Bank's basis for deciding that they are responsible for disputed transfers.

71. The upshot, of course, is that consumers are deprived of information that would otherwise allow them to convince M&T Bank that they did not authorize or benefit from—and thus are legally not responsible for—the unauthorized transfers subject of their disputes.

## *The Statutory Scheme*

72. The EFTA imposes a $50 cap on consumer liability if the consumer's debit card or other means of access are used by a fraudster. 15 U.S.C. § 1693g(a)(1).

73. The EFTA's $50 cap on liability is subject to just two exceptions. *See* 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b).

74. First, the $50 cap is raised to $500 when unauthorized transfers occur due to the loss or theft of an access device, *e.g.*, a debit card, and the consumer fails to notify his bank within two business days of learning that the device has been lost or stolen. 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b)(2).

75. Second, the $50 cap on a consumer's liability (or the $500 cap if the first exception applies) is lifted if: (1) an unauthorized transfer appears on the monthly statement that banks must send to consumers under 15 U.S.C. § 1693d(c); (2) the consumer fails to report the unauthorized transfer to his bank within 60 days after the statement was sent to the consumer; *and* (3) the bank can establish that unauthorized transfers made after the 60-day period would not have occurred but for the consumer's failure to provide timely notice of the earlier unauthorized transfer. 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b)(2).

76. In other words, when a consumer fails to alert his bank of unauthorized transfers within 60 days of those transfers first appearing on a bank-issued statement, the consumer's liability is uncapped for transfers that happen after the expiration of the 60-day period, so long as the financial institution can establish that those latter transactions would not have occurred but for the consumer's failure to provide timely notice to the financial institution. *See* 12 C.F.R.

§ 1005.6(b)(2),(3); *see also Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021) ("A consumer may be held liable for unauthorized transfers occurring after the 60-day period only if the bank establishes that those transfers 'would not have occurred but for the failure of the consumer' to timely report the earlier unauthorized transfer reflected on her bank statement."). The consumer's liability, however, remains capped at $50 (or $500) for transfers that occurred before or within the 60-day period.

77.     Thus, a financial institution can never hold a consumer liable for more than $50 in unauthorized transfers if: (1) the consumer did not lose his debit card or other access device; and (2) the consumer reported all losses within 60 days from when the first statement showing the fraud was transmitted to the consumer. *See Brown v. Bank of Am., N.A.*, No. 8:21-cv-2334, 2022 WL 2193286, at *2 (D. Md. June 17, 2022) ("[S]ection 1693g of the EFTA limits consumer liability to $50.00 for unauthorized electronic fund transfers, provided the consumer alerts the Bank of the unauthorized transfer timely and that transaction is not the result of a lost or stolen access device.").

78.     The EFTA also requires that the financial institution investigate any "error" reported by a consumer within ten business days of the financial institution's receipt of notice of such error. *See* 15 U.S.C. § 1693f(a).

79.     Alternatively, the financial institution may, within ten business days, provisionally recredit the consumer's account for the alleged error pending the conclusion of its investigation, provided that the investigation is concluded within forty-five days of the receipt of notice of the error. *Id.* at § 1693f(c).

80.     If a consumer's dispute is denied, the financial institution must "deliver or mail to the consumer *an explanation of its findings* within 3 business days after the conclusion of its

investigation." 15 U.S.C. § 1693f(d) (emphasis added). The financial institution must also provide the consumer with the documents that it relied on to make its decision to deny the consumer's disputes if the consumer requests. *Id.*; *see also* 12 C.F.R. § 1005.11(d)(1) ("The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.").

81. Although not defined by the EFTA or Regulation E, case law makes clear that "explanation" requires more than just a conclusory statement of the financial institution's findings. *See Gale v. Hyde Park Bank*, 384 F.3d 451, 453 (7th Cir. 2004) (distinguishing between a "determination" and "the results of such investigation"); *In re Bank of Am. California Unemployment Benefits Litig.*, 2023 WL 3668535, at *11 (S.D. Cal. May 25, 2023) ("These allegations plausibly allege that Plaintiffs 'got a determination but not the results of the required investigation or the supporting documentation' and are sufficient to state a claim under the EFTA." (cleaned up)); *see also* Black's Law Dictionary, *Explanation* (11th ed. 2019) ("The activity or process of expounding, interpreting, or making something intelligible; esp., the process of demonstrating by reasoning or investigation the causal or logical antecedents or conditions of some event or thing to be accounted for.").

82. Any violation of the EFTA entitles the consumer to actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1693m.

83. Treble actual damages are available in either of two circumstances.

84. First, treble damages are recoverable if "the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B)

did not have a reasonable basis for believing that the consumer's account was not in error." 15 U.S.C. § 1693f(e)(1).

85. Second, treble damages are recoverable if "the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." 15 U.S.C. § 1693f(e)(2).

86. As one federal appellate court recently remarked, "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Michigan First Credit Union*, 108 F.4th at 427.

87. In the class context, consumers are entitled to their actual damages, as well as statutory damages up to "$500,000 or 1 per centum of the net worth of" the financial institution. 15 U.S.C. § 1693m(a)(2)(B).

## COUNT ONE:
### VIOLATION OF THE EFTA AND REGULATION E
### 15 U.S.C. §§ 1693g, 1693m, 12 C.F.R. § 1005.6(b)
### (Individual Claim)

88. Plaintiff incorporates each of the preceding allegations.

89. M&T Bank violated 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6(b) by holding Plaintiff liable for unauthorized transfers in excess of the applicable statutorily imposed cap.

90. Because Plaintiff did not authorize the subject transfers, M&T Bank cannot meet its burden of establishing that the transfers were, in fact, authorized, as required under the EFTA. *See* 15 U.S.C. § 1693g(b).

91. Plaintiff suffered actual damages because of M&T Bank's violations of 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6(b), including but not limited to, the amount of the unauthorized transfers, Plaintiff's inability to access his hard-earned money, the economic consequences and

stress of not having access to his own money, and severe emotional distress from being denied recourse based on the implied notion that Plaintiff himself was committing fraud.

92. Based on M&T Bank's noncompliance with 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6(b), Plaintiff seeks actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1693m.

### COUNT TWO:
### VIOLATION OF THE EFTA AND REGULATION E
### 15 U.S.C. §§ 1693f(a), 1693f(e), 1693m, 12 C.F.R. § 1005.11(c)
### (Individual Claim)

93. Plaintiff incorporates each of the preceding allegations.

94. M&T Bank violated 15 U.S.C. § 1693f(a) by failing to investigate Plaintiff's unauthorized transfer disputes or, alternatively, by failing to reasonably investigate Plaintiff's unauthorized transfer disputes.

95. Plaintiff suffered actual damages because of M&T Bank's violations of 15 U.S.C. § 1693f(a), including but not limited to, the amount of the unauthorized transfers, Plaintiff's inability to access his hard-earned money, the economic consequences and stress of not having access to his own money, and severe emotional distress from being denied recourse based on the implied notion that Plaintiff himself was committing fraud.

96. Based on M&T Bank's noncompliance with 15 U.S.C. § 1693f(a) and 12 C.F.R. § 1005.11(c), Plaintiff seeks actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1693m.

97. Plaintiff seeks treble damages because M&T Bank did not timely provide him with provisional credits and neither conducted a good faith investigation of Plaintiff's disputes, or had a reasonable basis for believing that Plaintiff authorized the challenged transactions.

98. Alternatively, Plaintiff seeks treble damages because M&T Bank knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to M&T Bank at the time of its investigation. 15 U.S.C. § 1693f(e).

## COUNT THREE:
## VIOLATION OF THE EFTA AND REGULATION E
## 15 U.S.C. §§ 1693f(d), 1693m, 12 C.F.R. § 1005.11(d)
### (Class Claim)

99. Plaintiff incorporates each of the preceding allegations.

100. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class:

> All individuals who as: (1) M&T Bank accountholders; (2) disputed one or more electronic fund transfers as unauthorized; (3) and received from M&T Bank a notice stating "After a review of your account and thorough investigation, we have determined that the transaction(s) in question were processed correctly and no error has occurred. Therefore, we are denying your claim."; (4) during the one-year period before this Complaint was filed.

Plaintiff is a putative class member.

101. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through M&T Bank's internal business records, and the class members may be notified of the pendency of this action by mailed or e-mailed notice

102. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether M&T Bank's form denial language violated 15 U.S.C. § 1693f(d) and

15

12 C.F.R. § 1005.11(d) by failing to provide the class members an explanation of its findings that the challenged electronic fund transfers were authorized by the class members; and (2) the appropriate amount of statutory damages in consideration of the frequency and persistence of noncompliance, the nature of such noncompliance, the resources of M&T Bank, the number of persons adversely affected, and the extent to which M&T Bank's noncompliance was intentional.

103.    **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claim is typical of the claims of each putative class member. Plaintiff is also entitled to relief under the same cause of action as the other putative class members. The claims are based on the same facts and legal theories.

104.    **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representative because his interests coincide with, and are not antagonistic to, the putative class members' interests. Plaintiff has retained experienced and competent counsel; he intends to continue to prosecute the action vigorously; he and his counsel will fairly and adequately protect the interests of the members of the class; and he and his counsel have no interest that might cause them to not vigorously pursue this action.

105.    **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be nearly impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by M&T Bank's

conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

106.   M&T Bank violated 15 U.S.C. § 1693f(d) by failing to provide Plaintiff and the class members with written explanations about its decisions to deny disputes relating to electronic fund transfers, which Plaintiff and the class members claimed were unauthorized.

107.   As a standard practice, M&T Bank merely advises accountholders as follows when denying disputes of unauthorized use: "After a review of your account and thorough investigation, we have determined that the transaction(s) in question were processed correctly and no error has occurred. Therefore, we are denying your claim."

108.   M&T Bank issues that same "explanation" to all accountholders for whom it denies disputes of unauthorized use irrespective of M&T Bank's actual bases for doing so.

109.   Thus, although M&T Bank conceivably has different bases for denying disputes, it denies them using the same deficient language, which falls short of the statutorily required "explanation."

110.   Upon information and belief, M&T Bank's conduct is a part of a broader practice of frequent and persistent noncompliance with 15 U.S.C. § 1693f(d).

111.   Plaintiff and the putative class members suffered actual damages because of M&T Bank's violations of 15 U.S.C. § 1693f(d).

112.   Most notably, Plaintiff and the putative class members were unable to ascertain the bases for M&T Bank's decisions to deny their claims, which hamstrung them in their efforts to convince M&T Bank to reconsider its errant denials.

113. Based on M&T Bank's noncompliance with § 1693f(d), Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1693m.

WHEREFORE, Plaintiff and the class members demand judgment for actual, treble, and statutory damages against M&T Bank; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court considers proper.

Respectfully submitted,

**PLAINTIFF**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly (Bar No. 07244)
J. Patrick McNichol (Bar No. 19034)
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*